## BUTCHER *v.* CHARLES.

### (*Knoxville.*     November   9,   1895.)

1. PUBLIC SCHOOLS.  *Removal of teacher.*

    The teacher of a public school cannot be removed by the directors
    except for the statutory causes of "incompetency, improper
    conduct, or neglect of duty," and not for these causes until
    after conviction upon a fair trial had after proper notice, and
    upon charges duly preferred.   (*Post, pp. 536, 537.*)

    Code construed: § 1192, Subsec. 3 (M. & V.).

    Case cited and approved: Morley *v.* Power, 5 Lea, 700.

2. SAME.   *Directors' power to close.*

    The directors of a school cannot, in the absence of a custom to
    maintain schools for any particular period, close it .before the
    end of the school year, except on the happening of contingen-
    cies provided in the contract of employment, where it does not
    specify the duration of the term, but authorizes the directors
    to close the school whenever the average attendance falls below
    a designated number, or the funds for the support of the school
    shall be exhausted.   (*Post, pp. 533, 534, 537.*)

---

### FROM  HAWKINS.

---

Appeal from Chancery Court of Hawkins County.
H. G. KYLE, Ch.

SMITH & CHESTNUT for Butcher.

JARVIS & ARMSTRONG for Charles.

JOSHUA W. CALDWELL, Sp. J.   This is a petition by a school-teacher for mandamus upon school directors, requiring them to direct a County Trustee to draw his warrant for an amount alleged to be due the teacher as part of his earned salary.   The Chancellor granted the preliminary alternative writ, and, upon the hearing, decreed that it be made peremptory.   Defendants appeal.

On July 12, 1894, J. W. Bailey and H. E. Dykes, school directors of the eighteenth district of Hawkins County, who appear to have been the only acting directors, employed M. J. Butcher to teach public school No. 3 of said district from August 6, 1894.   A written contract was entered into, in the following words:

"STATE OF TENNESSEE, } *Contract with the directors*
   Hawkins County.   } *of school district No.* 18.

"This contract, entered into this twelfth day of July, 1894, between the school directors of the eighteenth district of Hawkins County, State of Tennessee, witnesseth: That the said directors have engaged the said M. J. Butcher as a teacher of school No. 3, in said district, from the sixth day of August, 1894, and agree to pay him the sum of $25 per month for his services.   The said M. J. Butcher agrees to give instruction in the studies required to be taught in said school, and prescribed by the school law, to such pupils as may attend the said school during the said term; to keep the record of said school accurately, according to law; to make, at the

end of each month, to the clerk of the district and to the County Superintendent, the report or summary prescribed by the school regulations; to deliver the register to the clerk of the district, and to the County Superintendent the teacher's abstract, properly filled out in every item, immediately after the close of the school; and discharge faithfully all other duties required by law of school-teachers. It is agreed between the parties that the said teacher shall not be entitled to demand from the directors a warrant for the payment of his salary for any month until the said teacher has delivered to the school directors named above the report, register, or abstract which is at the time due from him. And it is further agreed that the directors may close the school whenever the average daily attendance for the month shall fall below twelve pupils, or whenever the funds for the support of the school shall be exhausted."

At the August election, 1894, defendants, J. F. Charles, W. A. Harris, and E. Roark were elected school directors of the district, to succeed the directors who had employed Butcher, and went into office in the succeeding September. School No. 3 was taught in a Methodist church, the property of that denomination. Shortly after the opening of the school the new directors undertook to paint this church at a cost of about $50, using the school money. Petitioner, Butcher, and another filed a bill to enjoin this expenditure as unlawful, and as di-

verting to an improper use money properly applicable to Butcher's salary, and it appears that the injunction was granted, and was made perpetual. Pending that litigation, the directors sent to Butcher, the petitioner, the following notice:

"There will remain, after paying you for three months' services as teacher of school No. 3, in the eighteenth civil district of Hawkins County, about $50 school funds. There is a suit in Chancery Court, at Rogersville, as to whether this money shall be paid in repairing the 'school house' or not, and the said suit is not yet determined, and you are therefore, on this account, notified to close the school at the end of three months, and we will only pay you up to that time. This November 20, 1894."

It is charged by Butcher that in both these matters the directors were animated by personal dislike of himself, but it is not material to consider that question.

Butcher declined to dismiss the school, but continued to teach until January 14, 1895, a period of five and a half months. The directors paid him $75, or three months' salary, leaving, as he claims, a remainder due of $62.50.

Butcher states that during the last two and a half months that he taught, being the controverted period, the average attendance upon his school was from 20 to 35, the lowest being 20, and that he closed with 39.

By stipulation of counsel for both parties, it appears that on July 8, 1895, there remained in the hands of the Trustee of Hawkins County, and due the eighteenth school district, the sum of $84.87, as balance of public school funds going to that district for 1894–5. It appears that there are no necessary charges against this remainder, unless the petitioner, Butcher, be entitled to recover in this case. These facts also appear otherwise in the record. Thus the average attendance of pupils did not, at any time during Butcher's incumbency, fall below 12, and the funds for the support of the school for 1894–5 have not been exhausted.

The case has been argued on two hypotheses, first, that the directors had the power, under the circumstances, to dismiss the teacher, and did dismiss him, and that their action was valid; and, second, that they had the power to close the school at the end of three months, and that their action in closing it was proper, and not subject to review. If it were purely a case of dismissal, there would be no question in the case.

The statute, M. & V. Code, § 1192, Subsec. 3, declares that school directors may dismiss teachers for "incompetency, improper conduct, or neglect of duty." The power to dismiss is limited to these specified causes, and can never be exercised except after preferment of charges, and after notice and a fair trial. *Morley* v. *Powers*, 5 Lea, 700.

In this case no charges were preferred, and there

was no notice nor trial, and, consequently, there could have been no valid dismissal of the teacher. The real question in the case is as to the right of the directors to close the school at the end of three months, under the conditions then existing. The duration of the contract is nowhere specified. Butcher was simply employed from August 6, 1894. If it were shown that it is the custom in Hawkins County to maintain the schools for any particular period, that fact might be of value in this case;' but the record does not afford this assistance. We are constrained, therefore, to read the contract as applying to the school year of 1894–5, and to hold that Butcher was entitled to continue teaching during that period, subject to the contingencies specified in the contract—viz., the reduction of average daily attendance per month below 12, or the exhaustion of the fund for the support of the school. It appears that neither of these contingencies has arisen, and there is no evidence nor allegation that the school year had ended, even when Butcher closed his school.

Therefore, the decree of the Chancellor granting the prayer of the petition, and ordering a peremptory mandamus to issue as prayed for, was correct, and it is affirmed. The defendants, as individuals, will pay the costs of this appeal.